Good morning, Your Honors. Joseph Hurst for Appellant San Francisco BART. In reading the briefs again, as one does in preparation for oral argument, I was struck by the number of times that General Reinsurance attempted to imply or infer that BART and the WCA had manipulated the WCAB proceedings to put the loss on Jen Ray. And as a practical matter, that just doesn't work, because BART's self-insured retention was $500,000 from sometime in the late 80s, I believe, until 2002. And at the time that BART settled the gonselin matter, the earliest time that the agreed medical examiner had chosen – well, I shouldn't say chosen, had suggested was a possibility for a latency period was 1998. So that BART's self-insured retention during this time was the same $500,000. It didn't matter. Jen Ray was off the risk at some point, but there was no reason to manipulate the process in any way. And, of course, there's no evidence of manipulation. Then why are you fighting this so hard on the question of the latency period? Because the latency period, it appears – I mean, there's pretty good evidence that it's not the 15-year period that you're seeking now, which was the second estimate given by Dr. Clayton, hasn't been confirmed by anybody else. So why fight it? Why fight it? Yeah. Because at this point, a workers' comp award after five years is final for all purposes. And Jen Ray did not raise an issue regarding coverage until after the five years had elapsed. Right. But if you're covered for – let's suppose that the latency period confirmed by other experts is, let's say, eight years. So it gets to 1998. You say that you're covered. You're just not covered by Jen Ray. Why not simply go against those insurance companies? That insurance company says, sorry, but the policy is – but the WCAB said more than five years ago that you were covered by – that the latency period started in 1991. We're not covering it. And, of course, this is a matter of – with respect to the issue of collateral estoppel, this is a matter of collateral estoppel because BART was a part of the proceedings in which that 17 – or in which that 1991 date was established. Why was the 1991 date critical to the workers' comp determination? It was critical in the sense that in any workers' comp proceeding, you have to decide what the date of injury was. And that's particularly why the – Right. But it could have been almost anything, right? And Mr. Goslin still would have been covered. Yes. So it could have been eight years. It could have been 10 years. The 15 years just seems to be arbitrary because Dr. Clayton put a statement in there that it was 15 years. Workers' comp took it. There was no reason for you to contest it. That's correct. It really didn't matter for anything at the workers' comp inquiry, as long as it was sometime when he was employed by BART. That's correct. But the workers' comp judge was nevertheless – the workers' comp board was nevertheless required to find a date of injury. And once they found the date of injury, they could allot the liability to BART. And what's interesting is that under Labor Code Section 5500.5e, the insurer who is held liable – and in this instance, Gen Ray would have been on notice that it was likely to be liable. Under 5500.5e, they have a year to bring a contribution action against other insurers. That's the holding of the Chartist case on which they rely. Well, they found out about the award in April 2008. The award was made in December – I'm sorry. I think I've got the exact – the award was made in December 2008. They found out about the award in December 2009. It could have been a year earlier. I might have gotten myself mixed up. And in that instance, if that had happened, they had eight full months to bring in another insurer, and they wouldn't be collaterally bound. You know, that's the holding of the Chartist case, is that under that particular statutory provision, an insurer or an employer is entitled to dispute the date of injury as long as the liability to the underlying claimant doesn't change. But that's only true if the date of injury binds them forever going forward. Isn't it true that the only decisions that the WCAB had to make was whether you were liable to the gentleman and what amount? And the date. Well, the date of injury was a predicate to their finding of liability, but as Judge Bybee just suggested, the date of injury could have been anywhere within a certain range of years, and you would still be found liable, right? Correct. And at that point, whatever insurer was liable, was on the risk at that point, was free under Section 5500.5e to bring an action against any other insurer. But the issue is, was it a requirement? That's the difficulty I'm having with your argument. If it's required to do so, I could agree that it's collateral to stop. But an insurance coverage issue, in my view, seems to be different than the workers' compensation issue that you are relying upon. I don't think it is. It's a finding under the executive risk analysis. This is a finding by a competent tribunal. As we pointed out in our briefs, it has res judicata and collateral estoppel effects. Could that tribunal have decided that there was coverage for BART and against general reinsurance? Could the board have decided that question? Well, in the sense of saying that the injury occurred during BART's ‑‑ excuse me, during Gen Ray's coverage period, yes. The question we're deciding here today, is it your view that the board could have made the same ruling, whether or not, that is, whether or not general reinsurance is required to cover your liability? Could the WCAB have made that precise determination? Possibly, Your Honor. The cases on which the other side relies for the proposition that there is no jurisdiction, excuse me, there is no jurisdiction in disputes between excess insurers and self‑insured have to do with provisions of the policy that have nothing to do with coverage of the injured worker. When we're talking about coverage of the injured worker, then I think the WCAB does have jurisdiction. We're not talking about coverage of the injured worker. We're talking about the obligation of the excess insurer to the employer who has become obligated to the injured worker. So tell me your strongest case to support the proposition that the WCAB could make the determination that an excess insurance carrier is obligated to an employer who's been determined liable for a worker's compensation injury. What's your strongest case? Yeah. I have to find it. Jen Ray was the defendant in the case. Only I've forgotten the first name in it. Oh, yeah. It is Jen Ray v. WCAB 65 Cal Comp Cases 1441. That case said that the WCAB can bring in an insurer and adjudicate its obligation. The WCAB can bring in an insurer on its own motion? Yes. Yes. Under, I believe it's Labor Code 3702. And under what circumstances have they done that? And it sounds like the way you phrased it, it's discretionary with them anyway. Yeah. I don't believe it's mandatory, but in a circumstance where it's unclear which insurer would be liable for the risk, it's better to bring them both in and adjudicate it in front of the WCAB. That would have been terrific if they had done that here. It would have been terrific if they had brought all of your excess insurers in, laid them all out, and said, let's have at it. It's clear one of you, somebody here is liable for this. Well, that's, Your Honor, that's the point I want to make again is that under 5500.5E, that could have happened any time in the year after the award. Any time, you know, and Jen Ray, which was the party on the hook at that point, had a full, well, eight months anyway, in which to open a proceeding under 5500.5E. I think we've got to be careful here about trying to import the standards of civil litigation into WCAB proceedings. WCAB proceedings are intended to be fair, quick, and informal. I mean, the notion was, although I doubt that happens very often, the notion, at least in serious injuries, the notion was that it could be handled by injured employees on their own, so that there is a degree of informality here. And, Counsel, I appreciate your candor on that point. I think you're exactly right, which, you know, leads me to be somewhat hesitant to say therefore there's collateral estoppel here on a point that wasn't at issue, that wasn't of concern either to Mr. Goslin or to you at that point. You were covered by somebody, and it didn't matter what the date was. It certainly didn't matter to Mr. Goslin. And so that's the problem. I mean, it was an informal proceeding. I'm not faulting you for that. Right. But I'm hesitant to use the words collateral estoppel, because as the executive risk case points out, they're bound under principles closer to indemnity. And the point is that, first of all, they don't raise a lack of notice defense. But even if they had raised a lack of notice defense, under 5500.5e, they had an opportunity for eight months to readjust that. What would you have presented to them after the board proceeding? What did you present to Gen Ray after the board completed its findings, the compensation? I want to make sure I understand your question correctly, Your Honor, and reserve a couple of moments, a couple of minutes for rebuttal. But what we did present was the AME's deposition, the AME's letter saying that he was going to be released on April 1st, 1991, the entire legal and medical file. And you presented this to them when? In April of 2000. 2009? Yes. Okay. So four months after the CAB's. Right. Okay. But long before the expiration of any possible period under 5500.5, during which they could have done it. The point of it is that I think that putting this burden on BART to go out and fight with its excess insurer five years after the excess insurer has accepted the risk and has paid on the risk is antithetical to the way the workers' compensation scheme is set up in this state. It is, you know, it should not be BART's obligation to go out there and make these or fight with the excess insurer. Counsel, and this is a purely hypothetical, if we were to rule against you today, does BART still have a remedy with somebody else? No. Because of the statute. Because of the five-year statute of limitations. I'm not an expert on that particular one, but as I read the statute, that's it. I see that I have less than two minutes left I'd like to reserve for rebuttal. All right. Thank you. Good morning, Your Honors. Steven Shurer for Defendant General Reinsurance Corporation. I think it's useful to start with the — there are a bunch of references in the — and especially the reply brief to adjudications or determinations of date of injury by the workers' comp judge. But if you look at the actual order approving the compromise and release, there is no date of injury determination in that order. But it was a predicate finding that the judge had to make, correct? Well, I don't know. The judge — all the judge had to do under the statute and the regulations  So there I — the 55005 of the Labor Code and the regulation in Title VIII is 10882. Both say the judge needs to determine if the settlement is adequate. But there is no requirement as far as I can see that the judge has to determine that there is actually — the conditions of compensation exist. And that — Are you — are you conceding that if there were a date of injury finding, it would be binding on you? No, Your Honor. And we did — that was the issue we litigated based on the assumption that there was, even if there had been a finding, we contend it would not be binding on us. But I think it's important to recognize, first of all, especially given the executive risk argument, which is based upon the assumption of a judgment, that in this case there's no judgment. They don't have judgments in the workers' comp system. But there's not even a finding of fact, and there's not a determination or adjudication of date of injury. So what made you think that you were liable? If there were no findings of fact by the board — Yeah. Our policy is based upon workers' compensation losses that are based upon a statutory obligation of an employer to the injured worker. Right. There doesn't have to be any kind of adjudication. Sure, but you had to make a determination that this fell within your policy, and your policy was fairly old in the big scheme of things. So what made you think that the date of injury was in 1991? The very first report from the employer told us it was a 1991 injury. Okay. That was the only — And you knew that as of when? When they reported in December 21st, they provided no information about this loss, other than it was in our policy period. Okay. That was — I believe that's Exhibit U or something like that. Okay. But that would have been December of 2008. So you were now on notice. December of 2007. 2007. December. That was the first notice, was a week after the settlement. It was December 21st, 2000 settlement, but we didn't get any backup documents at all. So when did you start requesting backup documents? Sometime after the beginning of the year. So sometime in 2008? Sometime in 2008. Okay. And in March of 2008, they provided some backup documents, including some of the reports from Dr. Caton, and we don't dispute it. But the award was not provided at that time. Okay. And what year did you finally protest and say, not our problem? In 2012. But in 2009, according to your opponent over here, you had all the information that you needed. You had the decision of the WCAB. You had all of the information from the experts. And you waited another three or four years. You started to pay, and then you waited another three or four years before you disclaimed coverage. And in the meantime, their time to go elsewhere had lapsed, according to him. But there's no – they don't need to go back and set aside their determination. In fact, they have no right to, no basis for setting aside their determination. The issues between them and their excess insurers are outside the jurisdiction of the WCAB. They're not bound, other than their own stipulation of the date of injury. But the point is you had notice and opportunity to contest this or to be heard, it seems like, by April 2009. And you waited another three years to do anything about it. We weren't aware of the – you know, the information was in the documents that had been submitted. But it had always been – You weren't aware of what? The fact that the employee had continued to work until 2005 and had only been diagnosed in 2006, and the date of injury determination was based upon a latency determination of 15 years, based on the two-sentence supplemental report by Dr. Caton. Those things were in the materials. We do not deny, but they were not understood and read because the case had been reported and was repeatedly reported as a 1991 date of injury. It wasn't until, at some point, somebody by mistake apparently in 2011 or 12 said the date of injury was 2006, that somebody said – took a closer look and raised the issue. So the other thing that I think is important is, if you want to go over the notice issues a little bit more carefully, is that in March – Well, but you said you weren't raising a notice challenge. We're not raising a defense. We're not denying that there's – we're not liable on a covered claim because they gave us late notice. But they are arguing that we had some kind of obligation to set aside the WCAB determination. As I pointed out, I don't think there was a WCAB determination to set aside, but we are only responding to these issues because they say that we had an obligation to do something, something we deny. I just wanted to point out that in April, when we finally got the order that they say we should have tried to set aside, we still did not have the minutes of the hearing, which is the only place where the workers' compensation judge refers to the date of injury. We got that in October of 2008. So the 20-day period that they say we had to set aside the order had lapsed. By the time we found out, the judge hadn't made any statements at all about a date of injury. So that leaves him solely with this 5-year argument. Right, but you didn't – but that would have been – that still would have been 2008 when the 1-year period would have lapsed. Is that correct? There was a 20-day period for – they're arguing under 5903. It's a new argument on appeal. They didn't make it below. But they're arguing under Labor Codes 5903 that we had 20 days beginning on April 4th, 2008, to seek reconsideration of the order approving the compromise and release. There's two problems with that. We did receive that order at that time, but we – there's nothing in the order that says anything about date of injury. No, I'm talking about – I'm talking about the 5-year period? The 1-year period in 5500.5. Oh, 5500.5. That's applicable solely to actual workers' comp liability insurers, which are insurers that make themselves directly and primarily liable to injured workers. That issue was specifically addressed in the Millman case, the city of Contra Costa case in the courts of that. But it doesn't apply to excess insurers. It does not apply to excess insurers. So that section doesn't apply to us at all. Counsel, when I asked opposing counsel for his strongest case to support the proposition – excuse me – that this issue should have been determined before the board, he gave me Gin Ray v. Workers' Compensation Appeals Board 65 Cal Comp cases. Are you familiar with that case? Yes. I was – I litigated that case, Your Honor. Okay. So why doesn't that support the proposition – excuse me – that you must return to the board to have this – that you're bound by the board's decision? That was a case in which there were some very large penalties assessed against a self-insured employer. They wanted to have a settlement conference. They wanted to compel us to attend the settlement conference, and the court held it for that purpose, making us attend the settlement conference. They could join us, but it wasn't a joinder to determine our liability under the policy to them. In fact, we did litigate the coverage issue in that case, and it was litigated in the superior court, and it was affirmed on appeal. So there is a case called St. Jude v. General Reinsurance Corporation, and they litigated the actual coverage issues of liability for penalties in the general jurisdiction court, the superior court. And I think the Millman case makes that clear. It comments on the St. Jude case, and it says this case shows that we could be joined, but we cannot be joined for purposes of determining liability. First of all, we cannot be held liable to an injured worker, and we cannot be joined for purposes of determining our liability under a contract because that excess contract doesn't – the WCAB has no jurisdiction. I won't. I think I've addressed some of the things. One other issue that I think came up is the latency period issue. The real reason why latency is an issue, because the default date of injury, the default employer who is liable is the employer at the time of the last exposure to the conditions that caused the injury or the last hazardous conditions under 5500.5. So the only exception to that, that would have been at the date of retirement, 2005, when BART did have a $4 million retention. The only exception to that is if the parties can prove that there was a period of exclusive injurious exposure. And to do that, you have to prove not just an average latency period, but a minimum latency period. In other words, there was no – there's no proof in this case at all of a minimal latency period. And despite the fact that both experts picked dates on which the injury probably happened under the industrial indemnity case that we cited, that's not enough because all of the experts in this case said there was no minimum latency period. Counsel, how – in your view, how long did Gen Ray have to decide that it was no longer – it was not liable and that it would – and in fact, it was actually entitled to repayment of all monies that it had previously paid? So how long did you have? There's no fixed amount. Those are two separate issues. We did dismiss our counterclaim. You could have come in a couple of years from now. You could have paid out through, let's say, 2020 and then decided in 2020 you didn't really owe the money and seek all the back pay? Well, as long as new claims for reimbursement are being made, there's always going to be an issue about whether the policy applies. As long as they submit for the life of the injured worker new requests for reimbursement. The reason I'm asking, counsel, is I understand if you were paying – if you were paying through 2020 and discovered in 2020 that you probably really weren't liable, I can understand why you might go back at least a couple of years to get that money back. But at that point, BART can't go against anybody else. So are you – are you stopped under some doctrine from denying liability if you've paid out through the period against which BART would have an opportunity to seek reimbursement from some other company? We could be – we could be – we could be stopped if they proved estoppel. There is actually no, because that's under the super value case that says the coverage cannot be established by estoppel. Now, I can see they could make a separate argument that we can't – it's too late to go back and seek reimbursement of past payments if they detrimentally relied. But as a matter of law, it appears that the doctrine of implied waiver and equitable estoppel can't be used to establish coverage. So at any point, we would be able to say no coverage. Now, I also don't see why they cannot at any point put another excess insurer on notice. In fact, they already put Midwest on notice. That doesn't – But perhaps not for past – for past payments. They put – they put Midwest on notice already. So Midwest is on notice. They had the same right to ask for additional information as we did. So they said immediately that we're going to close our file because it doesn't look like this will ever reach our $4 million retention. Is Mr. Gonsolin still living? He's still living, yes. And it's – as we point out, it's probably unlikely that they'll ever – given the amount they claimed in their complaint, it doesn't seem too likely they'll ever reach $4 million in this particular case. If you have any – no further questions, I'll sit down. There's not. Thank you, counsel. Thank you, Your Honor. Rapado? Quickly, Judge Freeman, I was wrong about the dates. The award was made in December 2007. You'll look at the district court's judgment. They'll say that they had the information that he worked for BART until 2006 in, I think it was April, possibly May. Even Mr. Troyer says that by – excuse me, October 2008, they had the actual decision in hand, which left them still two months under 5500.5e to bring an action for contribution. Mr. Troyer also said that there was no WCAB finding as to the date of entry. And I am quoting from the minutes. This is the WCJ, the workers' compensation judge. Given the complexity of the issues herein, I have independently reviewed the medical record in this file to determine whether the settlement is adequate and whether or not the date of injury is as stipulated above. Having considered the reports of Dr. Caton, I find that the latency period for Mr. Gonsalon's myeloma is 15 years. We have an adjudication and a finding. It's not – And those minutes would have been provided to the insurance company when? I believe by April – excuse me, by April 2008. If not, perhaps in October 2008. But in any event, I don't think that an insurance company is going to start paying out tens of thousands of dollars on the – without some sort of notion of what the injury date – whether the injury date fell within their period of risk. Would they have had Dr. Caton's previous declaration that gave a lesser period? Yes. They were given both his deposition where he equivocated – I guess that's the way to characterize it – went from 8 to 12 years, and also his letter of – I don't want to choose a date and then be wrong, but his letter, which was used by the WCJ to find a latency period of 15 years. I'd like to leave quickly on the notion that this kind of maneuvering presents a grave danger to the simplicity and ease with which workers' comp proceedings are settled. If an insurer gets to sit back and say, okay, you go fight it out with the employer – with your employee – and once that's done, you've got to come in and litigate with us, then you're going to throw a real spanner in the works. And I think that that is exactly the rationale behind the holding in the executive risk case. Well, but opposing counsel says that the Millman case is exactly the opposite. It says that the board does not have the authority to adjudicate the coverage issues. It has the authority – well, we have a different interpretation on that. My belief is that Millman goes to issues that are not at all to do with coverage at all, with the liability to the insured employee. I would say that under Labor Code 3200 and 5001 – 5001 says it's the WCAB's responsibility to adjudicate all aspects of the workers' comp. But the typical case does not have the excess insurer in the proceedings before the WCAB, right? I mean, the typical case is between the employee and the employer, and a judgment is made. And if it's over a certain amount, then that's the first time the excess insurer is here from anybody? Usually. You know, I think in this case there was a mistaken alert to Midwest. By the way, when he says that Midwest is on notice, they were given notice back in 2007. They're not – we're well past the five years on that one as well. But, in fact, the excess insurer is usually alerted. In this case, they happen to be alerted late, but we don't have a late notice defense here. All right, counsel, thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Rodriguez v. Davis.
judges: Rawlinson, Bybee, Friedman